UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CROSBY LODGE, INC., a Nevada corporation,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NATIONAL INDIAN GAMING ASSOCIATION; PYRAMID LAKE PAIUTE TRIBAL GAMING COMMISSION; MERVYN WRIGHT, JR., DOES I through IV; and PYRAMID LAKE PAIUTE TRIBE,<br><br>　　　　　　Defendants. | 3:06-CV-00657-LRH-RAM<br><br>ORDER |

Presently before the court is a Motion to Dismiss (# 10[1]) filed by Defendant National Indian Gaming Commission ("NIGC"). Also before the court is a Motion to Dismiss (# 16) filed by the remaining defendants, Pyramid Lake Paiute Tribal Gaming Commission, Pyramid Lake Paiute Tribe, and Mervyn Wright (hereinafter "Tribal Defendants" or "Tribe"). Plaintiff, Crosby Lodge, Inc. ("Crosby"), filed an opposition to both Defendants' motions to dismiss (# 24), to which Tribal Defendants and NIGC replied (## 32 and 33.)

---

[1]Refers to the court's docket number.

## I. Factual Background

Crosby is a Nevada corporation licensed as a Class III[2] gaming operation by the Pyramid Lake Paiute Tribe. (First Am. Compl. (# 23) ¶¶ 5, 27.) Crosby operates a business on the Paiute Lake Indian Reservation in Washoe County, Nevada. The business consists of, among other things, a convenience store, bar, and gas station, and also operates fifteen slot machines. *Id.* ¶¶ 27-28. Tribal Defendants are demanding payment from Crosby in the amount of $79,282 pursuant to 25 C.F.R. § 522.10(c), which was enacted by the NIGC pursuant to provisions of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701, et seq. (First Am. Compl. (# 23) ¶¶ 31, 36, 38.) 25 C.F.R. § 522.10(c) requires that "not less than 60 percent of the net revenues [from individually owned gaming operations on tribal lands] be income to the Tribe." 25 C.F.R. § 522.10(c).

Crosby requests declaratory and injunctive relief arguing that IGRA does not require that sixty percent of the net revenue from its operation be paid to the Tribe and that NIGC exceeded its statutory authority in adopting 25 C.F.R. § 522.10(c). (First Am. Compl. (# 23) ¶¶ 42,46.) Crosby alleges, in the alternative, that if § 522.10(c) is a valid regulation and Crosby is required to pay sixty percent of its net revenues to the Tribe, the Tribal Defendants have nevertheless failed to comply with 25 U.S.C § 2703(9) by improperly calculating the amount due under § 552.10(c) by not deducting total gaming-related expenses from gross revenues. (First Am. Compl. (# 23) ¶ 49.) Crosby also alleges that Tribal Defendants have acted in excess of their authority in attempting to collect the sixty percent of net gaming revenue. *Id.* ¶¶ 52, 54. Crosby also claims that it may set-off payments in excess of amounts actually required by IGRA against future payments Crosby is required to make under other tribal gaming ordinances and codes. *Id.* ¶ 56. Crosby requests this court to declare that 25 C.F.R. § 522.10(c) is not required by IGRA and requests the court to

---

[2] Class III gaming is defined as all forms of gaming that "are not class I gaming or class II gaming." 25 U.S.C. § 2703(8). Class III gaming includes parimutuel horse race wagering, lotteries, banking card games, slot machines, and all games with non-Indian origins. *Artichoke Joe's v. Norton,* 216 F.Supp.2d 1084, 1092 (E.D. Cal. 2002).

2

1  permanently enjoin the Defendants from collecting the sixty percent of net revenues or otherwise
2  enforcing the regulation.  In the alternative, Crosby requests this court to declare, pursuant to 28
3  U.S.C. § 2201 and Federal Rule of Civil Procedure 57, that IGRA requires that total gaming related
4  operating expenses must be deducted in any calculation of net revenues, and requests that the court
5  order the Tribal Defendants to comply with that requirement.  (First Am. Compl. (# 23) at 15.)
6      NIGC moves to dismiss Crosby's claims against it pursuant to Federal Rule of Civil
7  Procedure 12(b)(1) for lack of subject matter jurisdiction.  (NIGC Mot. to Dismiss (# 10) at 1-2.)
8  NIGC argues that the court lacks jurisdiction because, among other reasons, no final agency action
9  has been taken and the Administrative Procedure Act ("APA") only provides for judicial review of
10 final agency actions, 5 U.S.C. § 704.  (NIGC Mot. to Dismiss (# 10) at 9; NIGC Reply (# 33) at 3-
11 4.)  NIGC also argues that Crosby's facial challenge to § 552.10(c) is time-barred because the six-
12 year statute of limitations provided for in 28 U.S.C. § 2401 has run out.  (NIGC Reply (# 33) at 2.)
13     Tribal Defendants move to dismiss Crosby's claims against them pursuant to Federal Rules
14 of Civil Procedure 12(b)(1) and 12(b)7) for lack of subject matter jurisdiction and failure to join a
15 necessary party under Rule 19.  (Tribal Defs.' Mot. to Dismiss (# 16) at 2.)  Tribal Defendants argue
16 that this court lacks jurisdiction because they possess sovereign immunity from suit.  *Id.*  Hence,
17 they also argue that the entire case must be dismissed because the Tribe is a necessary party to the
18 suit.  *Id.* at 5-6.
19     Tribal Defendants also argue that the case against them must be dismissed because IGRA
20 does not provide for a private right of action to sue a Tribe or its officials for violations of IGRA.
21 (Tribal Defs.' Mot. to Dismiss (# 16) at 5; Tribal Defs.' Reply in Support of Mot. to Dismiss (#32)
22 at 4-8.)  Tribal Defendants raise this motion pursuant to 12(b)(1), however, it should be raised
23 pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted. Accordingly,
24 Tribal Defendants' motion will be construed as one raised under 12(b)(6) as it pertains to the issue
25 of whether IGRA provides for the present lawsuit.  *See* Fed. R. Civ. P. 12(b)(6).
26

3

## II. Legal Standard

### A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 473 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

"In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine*, 704 F.2d at 1077 (citing *Thornhill Publ'g Co. v. General Tel. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the court is faced with a factual attack on subject matter jurisdiction, "'[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Thornhill Publ'g Co., Inc.*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077. "[A]n action should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity to be heard unless it is clear the deficiency cannot be overcome by amendment." *May Dept. Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980).

### B. Failure to State a Claim

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form

of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

**III. Discussion**

Crosby's complaint raises two essential issues. First, Crosby asserts that the Tribal Defendants have failed to comply with 25 U.S.C. § 2703(9) by improperly calculating the amount due under § 552.10(c) by not deducting total gaming-related expenses from gross revenues. (First Am. Compl. (# 23) ¶ 49.) Second, Crosby asserts that IGRA does not require that sixty percent of the net revenue from its operation be paid to the Tribe and that NIGC exceeded its statutory authority in adopting 25 C.F.R. § 522.10(c) and requests related declaratory and injunctive relief pursuant to the APA. (First Am. Compl. (# 23) ¶¶ 42,46.)

The court has examined the many issues and defenses raised by the parties and makes three findings that are dispositive of these motions. With regard to the first issue, the court finds that Tribal Defendants are immune from suit with regard to the specific subject matter of this dispute. The court also finds that no general private right of action against the Tribe or its officers and agencies exists under IGRA. Hence, Crosby's causes of action asserted against the Tribal Defendants must be dismissed. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978); *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1258-60 (9th Cir. 2000).

With regard to Crosby's second issue, Crosby asserts that jurisdiction for the APA claim is based on 28 U.S.C. § 1331. (Compl. ¶ 1.) The court finds that it has jurisdiction over Crosby's claims against NIGC under the APA because here, as in virtually all cases brought under the APA, "subject only to preclusion-of-review statutes created by Congress," federal jurisdiction is provided by 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99 (1977); *Artichoke Joe's*, 216 F.Supp.2d n.41 (applying *Califano* and stating that a "district court always has jurisdiction to review federal administrative action under 28 U.S.C. § 1331"). Because IGRA does not contain a preclusion of review provision, the court has subject matter jurisdiction under 28 U.S.C. § 1331, and Crosby may assert a cause of action under the APA. The issues will be discussed separately herein.

**A. Sovereign Immunity**

Indian tribes have long been recognized to possess sovereign immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). As sovereign entities, Indian tribes may not be sued in federal court absent an unequivocal waiver of sovereign immunity or a Congressional grant of jurisdiction. *Id.*; *Marceau v. Blackfeet Housing Authority*, 455 F.3d 974, 978 (9th Cir. 2006). Furthermore, sovereign immunity extends to an Indian tribe's business activities as well as its governmental functions. *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 757-60 (1998). An Indian tribe's waiver of sovereign immunity may not be implied; it must be express. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006).

Hence, there must be a clear, express, and unequivocal waiver of the Tribe's sovereign immunity before a suit may be brought against it. *See Santa Clara Pueblo*, 436 U.S. at 58; *Allen* F.3d at 1047; *Marceau*, 455 F.3d at 978. However, the record does not indicate that the Tribe has waived its sovereign immunity in any manner.

Crosby asserts that by entering into a State gaming compact and licensing non-tribal class III gaming, the Tribe has waived sovereign immunity and asks the court to enjoin the Tribal Defendants, along with the NIGC, from attempting to collect the sixty-percent provided for by §

552.10(c). To arrive at that conclusion, the court would have to imply a waiver of sovereign immunity from the Tribes conduct. However, the Ninth Circuit has made clear that the court is not permitted to imply a waiver of sovereign immunity. *Allen,* 464 F.3d at 1047; *Santa Clara Pueblo*, 436 U.S at 58 (explaining that a waiver of immunity "must be unequivocally expressed").

The court recognizes that this may leave Crosby without a non-Indian forum to pursue its claims against the Tribal Defendants. However, the Ninth Circuit has acknowledged this possibility and found it unavailing to the question of whether Tribes posses sovereign immunity from suit. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990).[3] In fact, sovereign immunity may leave a party with no forum for its claims, but the Tribe is immune nonetheless. *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975), *cert. denied*, 425 U.S. 903 (1976).

**B.    No Private Right of Action to enforce IGRA**

Alternatively, it is also well settled that Congress did not intend to provide for a private right of action to enforce IGRA. *Hein,* 201 F.3d at 1258-60 (no private right of action under IGRA); *Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1245-50 (11th Cir. 1999); *Tamiami Partners v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1049 (11th Cir. 1995); *Artichoke Joe's v. Norton*, 216 F.Supp.2d 1084 (E.D. Cal. 2002). Crosby attempts to employ the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), to suggest that, in the very least, Tribal officials are not immune from suit because they have in some way acted in excess of the authority given them by the Tribe or the IGRA. However, the record does not indicate that Tribal agencies and officials were doing anything other than acting on behalf of the Tribe in attempting to enforce a purportedly valid regulation that

---

[3] Crosby cites the cases of *Ross v. Flandreau Santee Sioux Tribe*, 809 F.Supp. 738 (D. S.D. 1992) and *Maxam v. Lower Sioux Indian Community of Minnesota*, 829 F.Supp. 277 (D. Minn. 1993) asserting that engaging in gaming pursuant to the IGRA constitutes an express waiver of a tribe's sovereign immunity. Those district courts reasoned, in summary, that allowing gaming under the IGRA while holding the tribes immune from suit for noncompliance with the IGRA "would make [the IGRA] a nullity." *Ross*, 809 F.Supp. at 281. This court recognizes there is some merit in this reasoning. However, this court has examined these cases and finds them to be incongruent with the Ninth Circuit's holdings in *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) and many of the other precedent cases discussed herein that hold that a waiver of sovereign immunity should not be implied by a Tribe's conduct of gaming operations.

the Tribe believed entitled it to a certain percentage of Crosby's gaming-related profits.  Regardless, even if Tribal officials did exceed their authority, Crosby may not bring a private cause of action against Tribal Defendants for alleged non-compliance with IGRA. *Hein,* 201 F.3d at 1258-60. IGRA contemplates a multitude of specific causes of action that may be brought by specific entities or persons.[4]  None of these provisions are applicable in this case.  Accordingly, all claims against the Tribal Defendants shall be dismissed, and the Tribal Defendants shall be dismissed from this suit.

### C. Failure to Join an Indispensable Party

Tribal Defendants assert that if they are dismissed from the suit, the case should be dismissed in its entirety pursuant to Rule 12(b)(7) for failure to join a necessary party.  Rule 19(a) provides for joinder of a party if (1) in the party's absence complete relief cannot be accorded among those already parties, or (2) the party claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the party's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  Fed. R. Civ. P. 19(a).  Although the Tribe can claim a legal interest in this lawsuit and can be joined, they are not indispensable parties under Rule 19(b) because their legal interest can be adequately represented by the NIGC.

"As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."  *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (holding that Indian tribes were

---

[4] *See Seminole Tribe*, 181 F.3d at 1248 (listing causes of action created by IGRA including 25 U.S.C. § 2710(d)(7)(A)(ii) (authorizing state or tribal suit to enjoin class III gaming conducted in violation of compact); 25 U.S.C. § 2710(d)(7)(A)(iii) (authorizing suit by Secretary of Interior to enforce procedures for conducting class III gaming); 25 U.S.C. § 2711(d) (authorizing tribal suit to compel Chairman of the NIGC either to approve or to disapprove management contract); 25 U.S.C. § 2713(a)(2), (b)(2) (creating right to hearing before NIGC regarding fine imposed or temporary closure ordered by Chairman); 25 U.S.C. §§ 2713(c), 2714 (authorizing appeal to district court of NIGC fines, permanent closure orders, and certain other decisions)).

not necessary parties where Government defendants would adequately represent the Tribes interests in the dispute). An existing party may adequately represent the interests of an absent party if (1) the present party will undoubtedly make all of the absent party's arguments, (2) the present party is capable and willing to make the absent party's arguments, and (3) the absent party would not offer any necessary elements that the present parties would neglect. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992). In general, the United States' trust obligations to the Indian tribes, which the NIGC and the Secretary of the Interior have a statutory duty to protect, satisfies the representation criteria and allows it to adequately represent the absent Tribal Defendants' interests. *See* 25 U.S.C. §§ 2701 & 2706(a)(2) (a principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government and the NIGC shall promulgate such regulations and guidelines as it deems appropriate to implement the provisions of IGRA to serve those goals.); *United States v. Eberhardt*, 789 F.2d 1354, 1360 (9th Cir. 1986) ("We hold that the general trust statutes in Title 25 do furnish Interior with broad authority to supervise and manage Indian affairs and property commensurate with the trust obligations of the United States.")

Tribal Defendants are not an indispensable party to Crosby's action against the NIGC because this court can grant complete relief between Crosby and NIGC with respect to that claim. Tribal Defendants do not allege a conflict between their interests and those of the NIGC and the record does not indicate that a conflict exists. *See Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998). Though the Tribal Defendants have an interest that is the subject matter of that claim, NIGC is prepared to represent the Tribe's interest as well as the Government's interests with respect to that claim. *See Hein*, 201 F.3d at1261-62; *Artichoke Joe's,* 216 F.Supp.2d at 1114. Tribal Defendants are not, pursuant to Rule 19, an indispensable party with respect to this cause of action.

\ \ \

**D.  Judicial Review Pursuant to the Administrative Procedure Act**

Crosby challenges NIGC's adoption of a regulation as beyond the authority granted them by IGRA pursuant to the APA, and requests declaratory and injunctive relief.  (First Am. Compl. (# 23) ¶42.)  NIGC argues that the court lacks jurisdiction because, among other reasons, no final agency action has been taken.  (NIGC Mot. to Dismiss (# 10) at 9; NIGC Reply (# 33) at 3-4.)  However, there is nothing in the relevant structure of IGRA and the NIGC cites no authority to suggest that Congress intended to preclude the type of APA review sought here.  Further, the Ninth Circuit has recognized that an APA claim against NIGC is available in the absence of a private cause of action under IGRA.  *Hein*, 201 F.3d at 1260-61 (tribe lacked private right of action under IGRA but could proceed under APA); *Oregon Natural Res. Council v. United States Forest Serv.*, 834 F.2d 842, 851 (9th Cir.1987) ("an implied private right of action under a violated statute is not a necessary predicate to a right of action under the APA"); *Rapid Transit Advocates, Inc. v. Southern California Rapid Transit Dist.*, 752 F.2d 373, 377 (9th Cir. 1985).  This is a predictable outcome because there is a strong presumption that Congress intended judicial review of agency action under the APA despite the fact that courts presume that Congress does not intend implied private rights of action.  *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986) (noting that right of action is available under the APA "absent some clear and convincing evidence of legislative intent to preclude review").

To obtain judicial review under the APA, Crosby must challenge a final agency action.  *See* 5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882,(1990); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) ("finality is. . . a jurisdictional requirement").  For an agency action to be final, the action must (1) "mark the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  "The core question is whether the agency has completed its decisionmaking process, and whether the result of

that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992); *Indus. Customers of NW Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005).

"The finality element must be interpreted in a pragmatic and flexible manner." *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Oregon Natural Res. Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir.1995)). Crosby asserts that 25 C.F.R. § 522.10(c) constitutes a final agency action. The court agrees that NIGC's enacting of 25 C.F.R. § 522.10(c) pursuant to IGRA constituted the "consummation of the agency's decisionmaking process." *See Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158 (1967); *cf. Gardner v. Toilet Goods Ass'n, Inc.,* 387 U.S. 167 (1967). Crosby's claim that the regulation somehow does not comport with congressional intent is a claim that is fit for judicial review by this court because it raises a purely legal question. *Abbott*, 387 U.S. at 149. Whether NIGC has exceeded its rulemaking authority can be answered based on the Congressional record because Congress has stated its intent in the hearings and debate surrounding passage of the IGRA. *Id.* Those records will form the basis of this court's decision. *Id.* Further, the parties cite no evidence that NIGC contemplates further administrative proceedings or that it intends to modify the regulation. *Id.* The regulation is also definitive and currently effective. *Id.* at 152. The regulation is not only one in which Crosby's "rights or obligations [as the operator of a class III gaming facility on tribal land] have been determined," but also a final decision in which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997); *Oregon Natural Desert Ass'n*, 465 F.3d at 982. Hence, 25 C.F.R. § 522.10(c) is a final agency action with respect to 5 U.S.C. § 704, and this court has jurisdiction to review the agency action.

### E. Statute of Limitations

Nevertheless, NIGC also argues that Crosby's claim is time-barred pursuant to 28 U.S.C. § 2401, which provides that "every civil action commenced against the United States shall be barred

unless the complaint is filed within six years after the right of action first accrues." NIGC cites *Wind River Min. Corp. v. U.S.*, 946 F.2d 710 (9th Cir. 1991), but misstates the Ninth Circuit's application of the law regarding when an action "first accrues." The Ninth Circuit held that "a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger." *Id.* An action does not necessarily first accrue on "the date the final regulation is adopted" as the NIGC claims. (NIGC Reply (# 33) at 2.) In the present case, the regulation was first applied to Crosby sometime in 2005 or 2006. (First Am. Compl. (# 23) ¶¶ 31-38.) Hence, Crosby's claim against NIGC first accrued less than two years ago and is not time-barred by 28 U.S.C. § 2401.

While Crosby may not sue Tribal Defendants, it may still pursue claims against NIGC alone by challenging the validity of the NIGC's administrative action pursuant to the APA.

For the foregoing reasons, IT IS HEREBY ORDERED that the Tribal Defendants' Motion to Dismiss (# 16) is hereby GRANTED in part and DENIED in part as set forth in this order.

IT IS FURTHER ORDERED that NIGC's Motion to Dismiss (# 10) is hereby DENIED.

IT IS SO ORDERED.

DATED this 10th day of August, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE