UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CROSBY LODGE, INC., a Nevada Corporation, | |
| Plaintiff, | 3:06-cv-00657-LRH-RAM |
| v. | ORDER |
| NATIONAL INDIAN GAMING COMMISSION, et al., | |
| Defendants. | |

Presently before the court is Defendant National Indian Gaming Commission's ("NIGC") Motion for Summary Judgment (#45[1]). Plaintiff Crosby Lodge has filed an opposition (#51), to which the NIGC replied (#54). Also before the court is Crosby Lodge's Motion for Leave to File a Surreply (#55). The NIGC has filed an opposition (#56), to which Crosby Lodge replied (#57).

**I.  Facts and Procedural History**

This is a civil dispute concerning the adoption and application of 25 C.F.R. § 522.10(c) (2008), a regulation enacted by the NIGC pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq.* Crosby Lodge is a Nevada Corporation that operates a business on the Paiute Lake Indian Reservation in Washoe County, Nevada. The business primarily consists of a convenience store, a bar, a motel, a gasoline station, and boat storage. The Pyramid Lake Paiute

---

[1] Refers to the court's docket number.

Tribe ("Tribe") has also licensed Crosby Lodge to conduct class III gaming on the property.[2] Pursuant to this license, Crosby Lodge operates fifteen slot machines. The owners of Crosby Lodge, Fred and Judy Crosby, are not members of the Tribe.

### A. Statutory and Regulatory Framework

Under the IGRA, class III gaming is lawful on lands within an Indian reservation if the gaming is authorized by an ordinance or resolution that (1) is adopted by the governing body of the Indian tribe having jurisdiction over the lands; (2) meets the requirements of 25 U.S.C. § 2710(b); and (3) is approved by the Chairman of the NIGC. 25 U.S.C. § 2710(d). In addition, the IGRA requires (1) the reservation to be located in a state that permits class III gaming and (2) the class III gaming to be conducted in conformity with a Tribal-State compact entered into by the Indian tribe and the State and approved by the Secretary of the Interior. 25 U.S.C. § 2710(d).

Further, the IGRA authorizes the NIGC to promulgate "such rules and guidelines as it deems appropriate to implement the provisions of [the IGRA]." 25 U.S.C. § 2706(b)(10). Pursuant to this authorization, on January 22, 1993, the NIGC adopted 25 C.F.R. Part 522, which governs the submission of tribal gaming ordinances. Section 522.10(c) of Part 522 requires tribes that license individually owned gaming operations to require by ordinance "not less than 60 percent of the net revenues be income to the Tribe." 25 C.F.R. § 522.110(c).

In accordance with the IGRA's requirements, on August 4, 1997, the Tribe and the State of Nevada entered into a gaming compact ("compact" or "Tribal-State compact") governing class III gaming within the Pyramid Lake Reservation, and on January 6, 1998, the Secretary of the Interior approved the compact. In 1999 the Tribe adopted a Tribal Gaming Ordinance ("ordinance") by Tribal Resolution Number PL 73-99, and on July 19, 2000, the NIGC approved the ordinance. The

---

[2] Class III gaming is defined as all forms of gaming that "are not class I gaming or class II gaming." 25 U.S.C. § 2703(8). Class III gaming includes parimutuel horse wagering, banking card games, slot machines, and all games with non-Indian origins. *Artichoke Joe's v. Norton*, 216 F.Supp.2d 1084, 1092 (E.D. Cal. 2002).

ordinance prohibits class III gaming unless a person or entity complies with the terms of the compact and receives a license from the Tribal Gaming Commission. Neither the Tribe's ordinance nor the Tribal-State compact include a specific provision requiring sixty percent of the net revenue of non-tribal class III gaming be income to the Tribe as required by 25 C.F.R. § 522.110(c).

**B. Application of 25 C.F.R. § 522.110(c) to Crosby Lodge**

On May 20, 2004, the NIGC's General Council sent a letter to the Tribe stating, pursuant to 25 C.F.R. § 522.110(c), sixty percent of the proceeds from individually owned gaming operations on the reservation must go to the Tribe. On September 27, 2005, the NIGC's General Counsel sent another letter to the Tribe specifically discussing Crosby Lodge and stating that Crosby Lodge must meet certain requirements, including giving "[sixty] percent of the proceeds . . . to the tribe." (Pl.'s Opp. Mot. Summ. J. (#51), Ex. C.)

Following the NIGC's letters, on February 7, 2006, the Tribal Gaming Commission directed Crosby Lodge to conduct an independent audit of its business. Pursuant to the audit, Crosby Lodge determined its gross gaming revenue, amounts paid out as prizes for the 2005 calendar year, and gaming-related operating expenses. On June 13, 2006, Crosby Lodge presented the audit report to the Tribal Gaming Commission.

On August 16, 2006, the Tribal Gaming Commission informed Crosby Lodge that pursuant to 25 C.F.R. § 522.10(c), Crosby Lodge owed the Tribe sixty percent of its "net revenue," as defined in 25 U.S.C. § 2703(9).[3] The Tribal Gaming Commission concluded that Crosby Lodge's net revenue was $132,137, and calculated sixty percent of the net revenue to equal $79,282.00. Crosby Lodge has paid the $79,282.00 owed under protest.

///

---

[3] Title 25, United States Code section 2703(9) defines "net revenue" as "gross revenues of an Indian gaming activity less amounts paid out as, or paid for, prizes and total operating expenses, excluding management fees." 25 U.S.C. § 2703(9).

3

**C. Procedural History**

In relevant part, the complaint alleges that the NIGC exceeded its statutory jurisdiction and authority in enacting 25 C.F.R. § 522.110(c) and that the regulation is invalid as applied to Crosby Lodge. (First Am. Compl. ¶ 41.) On February 2, 2007, pursuant to Federal Rule of Civil Procedure 12(b)(1), the NIGC filed a motion to dismiss for lack of subject matter jurisdiction (#10). On August 10, 2007, this court denied the NIGC's Motion to Dismiss, concluding that, pursuant to 28 U.S.C. § 1331, the court possesses subject matter jurisdiction over Crosby Lodge's claims arising under the Administrative Procedure Act ("APA"). (Order (#34) at 6.) The court also found that the six-year statue of limitations provided for in 28 U.S.C. § 2401 does not bar Crosby Lodge's facial challenge to the regulation because the NIGC first applied the regulation to Crosby Lodge less than two years before the commencement of the present action. (Order (#34) at 12.)

The NIGC subsequently filed a motion for reconsideration of the August 10, 2007, order arguing that the court committed clear error in holding that the statute of limitations did not bar Crosby Lodge's challenges to the regulation. (Def.'s Mot. Recons. (#36) at 2-3.) On January 31, 2008, the court granted the motion for reconsideration, finding that remaining factual issues prevented the court from determining whether the statute of limitations bars the present action. (Order (#44) at 3.) The court's holding was twofold. First, with regard to a facial challenge to 25 C.F.R. § 522.10(c), the court noted that the parties do not dispute that the six-year statute of limitations period has run because the regulation was adopted in 1993, and Crosby Lodge did not file its claim until 2006. (Order (#44) at 3.) Nonetheless, the court found, "[a]lthough it appears that Crosby Lodge should have known that 25 C.F.R. § 522.10(c) could be applied to it, the court cannot say that equitable tolling would be unavailable to Crosby Lodge." (Order (#44) at 4.) Thus, the court concluded that dismissal was inappropriate because there may be factual support for an equitable tolling claim. (Order (#44) at 4.)

Second, with respect to an "as applied" challenge to the regulation, the court found it

undisputed that the NIGC never applied 25 C.F.R. § 522.10(c) directly to Crosby Lodge. (Order (#44) at 4.) Nevertheless, the court noted its concern with the implication of barring a substantive "as applied" challenge to § 522.10(c), and opted to reserve ruling on the issue of an "as applied" challenge until it was presented in a motion for summary judgment. (Order (#44) at 5.) The court urged the parties to provide additional points and authorities related to the issue at that time. (Order (#44) at 5.)

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.  Discussion**

In support of the motion for summary judgment, the NIGC makes two primary arguments. First, the NIGC maintains that the applicable statute of limitations bars the suit with respect to both a facial and an as applied challenge to 25 C.F.R. § 522.10(c). Second, the NIGC argues the Tribe is a necessary and indispensable party within the meaning of Federal Rule of Civil Procedure 19. The court addresses each of these arguments below.

**A.  Statute of Limitations**

The NIGC argues that the relevant statute of limitations, 28 U.S.C. § 2401(a), bars Crosby Lodge's facial and as applied challenges to 25 C.F.R. § 522.10(c). Section 2401(a) provides, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The Ninth Circuit has held that "an action commenced by filing a complaint for review of agency action is a 'civil action' within the meaning of section 2401(a)." *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712 (9th Cir 1991).

As § 2401(a) indicates, the point at which the statute of limitations begins to run depends on when the plaintiff's cause of action first accrues. In *Wind River*, the Ninth circuit addressed the question of when a right of action first accrues. 946 F.2d at 713-15. "If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision." *Id*. at 715. "If, however, a challenger

contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." *Id*. The *Wind River* court believed that the government should not be permitted to avoid all challenges to its actions simply because the agency took the action long before anyone discovered the true state of affairs. *Id*. The court specifically held that "a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger." *Id*. at 716.

### 1. Facial Challenge to the Regulation

The parties do not dispute that the six-year statute of limitations has run with respect to a facial challenge to 25 C.F.R. § 522.10(c) because the NIGC adopted the regulation in 1993, and generally a facial challenge must be made within six years of the issuance of the regulation. *See Wind River*, 946 F.2d at 715. Nevertheless, Crosby Lodge asserts that the "doctrine of equitable tolling applies to toll the limitation period in 28 U.S.C. § 2401(a) until at least December 1, 2001." (Pl.'s Opp. Mot. Summ. J. (#51) at 1.)

### I.   "Jurisdictional" Nature of 28 U.S.C. § 2401

As a threshold matter, the court must determine whether the statute of limitations in this case is subject to an equitable tolling claim. Generally, there are two types of statutes of limitations. *John R. Sand & Gravel Co. v. United States*, 128 S.Ct. 750, 753 (2008) (citations omitted). First, affirmative defense-type statutes of limitations seek primarily to protect defendants against unduly delayed claims. *Id.* Under these statutes, defendants waive a limitations defense if they fail to raise the defense at the pleadings stage, and a court typically can toll the limitations in light of equitable considerations. *Id.* Second, "jurisdictional" statutes of limitations focus not on protecting a defendant's interest in timely claims, but seek to achieve broader, system-related goals, such as facilitating the administration of claims. *Id.* These statutes are not subject to waiver or

1  equitable tolling. *Id.*

2  In *Cedars-Sinai Med. Ctr. v. Shalala*, the Ninth Circuit held that 28 U.S.C. § 2401(a)'s six-
3  year statute of limitations is not "jurisdictional." 125 F.3d 765, 770 (9th Cir. 1997). Noting that
4  statutory language is "likely to be a realistic assessment of legislative intent as well as a practically
5  useful principle of interpretation," the court reasoned that § 2401(a) makes no mention of
6  jurisdiction, and erects only a procedural bar, thus permitting parties to assert traditional exceptions
7  to the statute of limitations such as waiver, equitable tolling, and estoppel. *Id.* (*citing Irwin v.*
8  *Dep't of Veterans Affairs*, 498 U.S. 89, 111 (1990)).

9  The NIGC notes that in *John R. Sand & Gravel Co.*, the Supreme Court recently held that
10 the statute of limitations applicable to claims brought before the Court of Federal Claims is
11 jurisdictional in nature. 128 S. Ct. at 753-54. That statute reads, "[e]very claim of which the
12 United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is
13 filed within six years after such claim first accrues." 28 U.S.C. § 2501. The NIGC argues that the
14 key language of § 2401 is virtually identical to § 2501, and as a result the holding of *John R. Sand*
15 *& Gravel Co.*, namely that § 2501 is jurisdictional in nature, should apply equally to § 2401.

16 The District Court in the Northern District of California recently issued an opinion
17 considering and rejecting an argument identical to the NIGC's argument here, confirming that §
18 2401 is not jurisdictional in nature. *See Pub. Citizen, Inc. v. Mukasey*, 2008 U.S. Dist. LEXIS
19 81246, at *24-25 (N.D. Cal. Oct. 9, 2008) ("the court sees no reason to attempt to extend [*John R.*
20 *Sand & Gravel Co.*'s] holding and [apply it to § 2401]"). Similarly, this court declines to read *John*
21 *R. Sand & Gravel Co.* as altering the Ninth Circuit's previous conclusion that § 2401(a) is not
22 jurisdictional in nature.. As the Supreme Court noted, § 2501 is a "special statute of limitations
23 governing the Court of Federal Claims." *John R. Sand & Gravel Co.*, 128 S. Ct. at 752. Moreover,
24 generally "the same refutable presumption of equitable tolling applicable to suits against private
25 defendants should also apply to suits against the United States." *Irwin*, 498 U.S. at 95-96. Thus,

26

there is a presumption that equitable tolling applies to suits against the United States. *Id*. If Congress wishes to alter this presumption, it may do so explicitly in the applicable statute. Here, there is no indication that Congress intended § 2401 to be jurisdictional in nature. As a result, the court declines to hold that § 2401 is jurisdictional and instead finds that § 2401 is subject to a claim of equitable tolling.

### ii. Application of Equitable Tolling

Having concluded that Crosby Lodge may assert a claim of equitable tolling, the court must now determine whether such a claim is viable in this case. Equitable tolling applies in situations where, "despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001) (*quoting Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)). "[T]he party invoking tolling need only show that his or her ignorance of the limitations period was caused by circumstance beyond the party's control . . . and that these circumstances go beyond a 'garden variety claim of excusable neglect.'" *Id*. (*quoting Irwin*, 498 U.S. at 96).

Here, the NIGC adopted 25 C.F.R. § 522.10(c) on January 22, 1993. The Tribe adopted its gaming ordinance in 1999, and the NIGC approved the ordinance on July 19, 2000. It appears that the Tribal Gaming Commission did not attempt to apply the regulation to Crosby Lodge and collect sixty percent of Crosby Lodge's net revenue until August 16, 2006. It further appears to be undisputed that the ordinance adopted by the Tribe does not include any provision requiring that sixty percent of the net revenue of non-tribal class III gaming be income to the Tribe. Crosby Lodge filed its complaint on December 1, 2006.

Thus, by the time the Tribe adopted its gaming ordinance, the six-year statute of limitations had already run. Moreover, the ordinance that was approved did not appear to apply 25 C.F.R. § 522.10(c) to Crosby Lodge because it contained no provision requiring that sixty percent of the net revenue of non-tribal class III gaming be income to the Tribe. Even after the NIGC approved the

ordinance on July 19, 2000, there is no indication that the Tribe attempted to apply the regulation to Crosby Lodge until approximately six years later. In addition, the NIGC itself does not appear to have sought application of the regulation at least until May 20, 2004, when it sent a letter to the Tribe notifying the Tribe of § 522.10(c)'s requirements. Further, it is unclear when, pursuant to the gaming ordinance, the Tribe licensed Crosby Lodge to conduct class III gaming at its facility. However, the licensing must have been some time after July 19, 2000, when the NIGC approved the ordinance, well after the statute of limitations had run. For these reasons, the court finds that equitable tolling applies to this case. Accordingly, the court will equitably toll the statute of limitations and finds that the statute of limitations does not bar Crosby Lodge's facial challenge to the regulation.

### 2.     "As Applied" Challenge to the Regulation

The NIGC argues that the limitations period of § 2401(a) also bars an "as applied" challenge to 25 C.F.R. § 522.10(c). When a party "contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." *Wind River*, 846 F.2d at 715. In such a case, the party must bring the challenge within six years of the agency's application of the disputed decision to the challenger. *Id.* at 716.

An "as applied" challenge must rest on final agency action.[4] 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no remedy in a court are subject to judicial review.") Generally, the following two conditions must be satisfied for an agency decision to be final: (1) the action must mark the "consummation" of the agency's

---

[4] The court previously held that the adoption of 25 C.F.R. § 522.10(c) constituted a final agency action permitting Crosby Lodge to bring a *facial* challenge to the regulation. However, whether there is final agency action permitting Crosby Lodge to bring an *as applied* challenge is a separate and distinct question.

10

decisionmaking process and (2) the action must be one by which "rights or obligations have been determined" or from which "legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations and internal quotations omitted). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). In determining whether an agency action is final, the court looks to whether the action "amounts to a definite statement of the agency's position . . . has a direct and immediate effect . . . or if immediate compliance is expected." *Or. Natural Desert Ass'n v. United States Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations and internal quotations omitted).

Under this standard, following an enforcement proceeding, Crosby Lodge might challenge the NIGC's application of 25 C.F.R. § 522.10(c) to it. *See Envtl. Prot. Ctr. v. Pac. Lumber Co.*, 268 F. Supp. 2d 1101, 1120 (*citing NLRB v. FLRR*, 834 F.2d 191, 195-96 (D.C. Cir. 1987)). Alternatively, following the NIGC's denial of a petition to rescind or amend the regulation, Crosby Lodge might seek judicial review of the decision on substantive grounds. *See id.* (*citing Pub. Citizen v. NRC*, 901 F.2d 147, 152 (D.C. Cir. 1990); *NLRB*, 834 F.2d at 196). However, it is undisputed that neither of these events have occurred here. The Tribe, rather than the NIGC, has taken action requiring Crosby Lodge to comply with 25 C.F.R. § 522.10(c). The NIGC has taken no action against Crosby Lodge that demands immediate compliance. Crosby Lodge cannot challenge the regulation as applied against the NIGC until the NIGC actually applies the regulation to Crosby Lodge.

Crosby Lodge makes two additional arguments in support of its contention that, despite undisputed evidence that the NIGC never applied the regulation directly to Crosby Lodge, the court should nonetheless permit Crosby Lodge to assert an as applied challenge against the NIGC. First, Crosby Lodge argues that the NIGC lacks authority to regulate the enforcement of class III gaming regulations directly, and therefore the NIGC could never bring an enforcement proceeding against

11

Crosby Lodge. However, even if the NIGC lacks the authority to enforce the regulation directly against Crosby Lodge, there still must be a final agency action for the court to review. As noted, one such final agency action could be the NIGC's denial of a petition to amend or rescind 25 C.F.R. § 522.10(c).[5]

Second, Crosby Lodge argues that the NIGC was sufficiently involved in the Tribe's application of 25 C.F.R. § 522.10(c) to Crosby Lodge to permit it to bring an as applied challenge against the NIGC. In particular, Crosby Lodge notes that on May 20, 2004, the NIGC's General Counsel sent a letter to the Tribe indicating that sixty percent of the proceeds of individually owned gaming operations must go to the Tribe. On September 27, 2005, the NIGC's General Council sent another letter to the Tribe specifically discussing Crosby Lodge and stating that Crosby Lodge must meet certain requirements, including giving "[sixty] percent of the proceeds . . . to the tribe." (Pl.'s Opp. Mot. Summ. J. (#51), Ex. C.)

Even assuming the NIGC's General Counsel's letter influenced the Tribe's decision to enforce 25 C.F.R. § 522.10(c), "an advisory opinion of the NIGC's General Counsel . . . has no legal effect because it is not a final decision of the agency." *NGV Gaming, Ltd., v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1065 (N.D. Cal. 2005) (*citing Cheyanne-Arapaho Gaming Comm'n v. Nat'l Indian Gaming Comm'n*, 214 F. Supp. 2d 1155 (N.D. Okla. 2002) (finding that a letter written by the General Counsel of the NIGC was merely advisory and did not constitute official agency action); *Sabella v. United States*, 863 F. Supp. 1, 5 (D. D.C. 1994) (observing that the General Counsel of a government agency is "not a decision-maker at the highest level and

---

[5] While, as the court noted in its previous order, the court's decision might place Crosby Lodge in the "unenviable position of being forced to pay sixty (60) percent of its revenue to the Tribe, or cease gaming operations, under an arguably unlawful regulation until Crosby Lodge is able to file a petition to rescind the regulation and appeal the denial of the petition," (Order (#44) at 5 (*citing Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990)), here Crosby Lodge is not without a remedy. First, Crosby Lodge has not argued and the court sees no indication that administrative exhaustion through a petition to amend or rescind the regulation will be futile in this case. Second, the court will equitably toll the statute of limitations with regard to a facial challenge, thereby permitting Crosby Lodge to assert its facial challenge to 25 C.F.R. § 522.10(c).

therefore, her opinion does not create any law or bind the Administrator")), *rev'd in part on other grounds by Guidiville Band of Pomo Indians v. NGV Gaming, Ltd., 531 F.3d 767* (9th Cir. 2008).

Thus, the court finds that with respect to an as applied challenge, there is no final agency action for the court to review. As a result, the court will grant summary judgment for this claim.

**B. Failure to Join a Necessary and Indispensable Party**

Finally, the NIGC argues that the court lacks jurisdiction over this case because the Tribe is a necessary and indispensable party pursuant to Federal Rule of Civil Procedure 19. Because the court has determined that Crosby Lodge does not have a viable as applied challenge to the regulation, the court restricts its discussion to whether the Tribe is a necessary and indispensable party to Crosby Lodge's facial challenge to 25 C.F.R. § 522.10(c).

Determining whether a party is necessary and indispensable under Rule 19 involves a three-step inquiry. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citations omitted) First, under Rule 19(a), the court determines whether a party is "necessary." To make this determination, the court considers whether (1) it can grant complete relief among the existing parties or (2) the party claims an interest relating to the subject of the litigation. Fed. R. Civ. P. 19(a). If the party claims an interest in the litigation, the absent party is necessary to the action if the disposition of the action without the party would (1) impair or impede the party's ability to protect their interest or (2) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the claimed interest. Fed. R. Civ. P. 19(a). Second, if the court finds that the absent party is a necessary party, the court must then determine whether joinder of the party is feasible. *Peabody W. Coal Co.*, 400 F.3d at 779 (citations omitted). Finally, if joinder is not feasible, the court determines whether the case can proceed without the absent party or whether the absent party is an "indispensable" party such that the court must dismiss the action. *Id.*

The NIGC argues that the Tribe is a necessary party because the Tribe has a "legally

13

protected interest in how its gaming [c]ompact with Nevada is interpreted and therefore . . . qualifies as a 'necessary' and 'indispensable' party under [Rule] 19." (Def.'s Reply to Pl.'s Opp. Mot. Summ. J. (#54) at 16.) Crosby Lodge counters that it does not challenge the "authority of the Tribe to tax Crosby's gaming revenues in a manner consistent with the Tribe-Nevada compact," and as a result the Tribe is not a necessary party. (Pl.'s Opp. Mot. Summ. J. (#51) at 24.)

Unlike the cases cited by the NIGC, this case does not involve the interpretation of or a direct challenge to an agreement to which the Tribe is a party. Instead, under its facial challenge, Crosby Lodge seeks a determination of the validity of the NIGC's adoption of 25 C.F.R. § 522.10(c). The question of whether the compact itself requires or permits the Tribe to collect sixty percent of Crosby Lodge's class III gaming revenue is not currently before the court. While the Tribe undoubtedly has an interest in the outcome of the court's determination, the Tribe does not have a direct, specific, and legally protected interest in the suit.

Further, the court finds that the NIGC can adequately represent the Tribe's interests with regard to a facial challenge to the regulation. "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (holding that Indian tribes were not necessary parties where Government defendants would adequately represent the Tribes interests in the dispute). An existing party may adequately represent the interests of an absent party if (1) the present party will undoubtedly make all of the absent party's arguments, (2) the present party is capable and willing to make the absent party's arguments, and (3) the absent party would not offer any necessary elements that the present parties would neglect. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992). In general, the United States' trust obligations to the Indian tribes, which the NIGC and the Secretary of the Interior have a statutory duty to protect, satisfies the representation criteria and allows it to adequately represent the absent Tribal Defendants' interests. *See* 25 U.S.C. §§ 2701 & 2706(a)(2)

1  (a principal goal of Federal Indian policy is to promote tribal economic development, tribal
2  self-sufficiency, and strong tribal government and the NIGC shall promulgate such regulations and
3  guidelines as it deems appropriate to implement the provisions of IGRA to serve those goals.);
4  *United States v. Eberhardt*, 789 F.2d 1354, 1360 (9th Cir. 1986) ("We hold that the general trust
5  statutes in Title 25 do furnish Interior with broad authority to supervise and manage Indian affairs
6  and property commensurate with the trust obligations of the United States.")
7  　　　　Here, the NIGC can adequately represent the Tribe's interests because both the Tribe and
8  the NIGC ultimately seek to uphold the validity of 25 C.F.R. § 522.10(c).  While the NIGC argues
9  that "the plaintiff's real challenge is to the authority of the Tribe to tax Crosby's gaming revenues
10 in a manner consistent with the IGRA and 25 C.F.R. § 522.10(c)," the Tribe's authority to tax the
11 gaming revenue is not the issue presently before the court.  Instead, the issue is whether the NIGC
12 exceeded its authority in adopting 25 C.F.R. § 522.10(c).  Accordingly, the court finds that the
13 Tribe is not a necessary and indispensable party.
14 　　　　**C.  Motion to File Surreply**
15 　　　　Crosby Lodge has filed a motion for leave to file a surreply in response to the NIGC's reply
16 to Crosby Lodge's opposition to the motion for summary judgment.  Specifically, Crosby Lodge
17 seeks an opportunity to challenge the NIGC's arguments concerning whether the Tribe is a
18 necessary and indispensable party.  However, because the court has resolved the issue in Crosby
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26

Lodge's favor without considering its surreply, the court will deny the motion.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (#45) is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiff's Motion to File Surreply (#55) is hereby DENIED.

IT IS SO ORDERED.

DATED this 3rd day of December, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

16